May it please the Court, again, my name is Stuart Filinski. I represent Jiang Fang, who is present in court, and along with her mother and her mother's husband. The arguments in this case are essentially the same as made in the prior case of Strokis. However, I believe what I will have to do is go into the nature of the K visa, which has been called a hybrid. It's not an immigrant visa, and since it's not an immigrant visa, it has to be a non-immigrant by definition. As I point out in the brief, a non-immigrant can be coming here permanently. Even though it's a non-immigrant visa, the State Department processes it as if it's an immigrant visa. You go through all the vetting, the background checks, the medical exam, the affidavit of support. And then, again, the person goes through an inspection at the airport, which happened here. Now, what are the conditions of the K-1 and the K-2 when they land? They're almost a lawful permanent resident. There is one little act that remains. The marriage has to take place within 90 days. That's it. Nothing more, nothing less. And that's what happened here. And, again, I go by the argument of it's not under 245A, but this Court has the advantage here of not only Judge O'Neill's decision, but Judge Wilkin's decision in the Veroficant case. And I would submit, if 245A applies, then it is Judge Wilkin's decision that should apply. And although, you know, there was no attorney there, I do know for a fact in Veroficant, because I asked, they were aware of the fact that the Jiang case was being litigated. The Eastern District is an electronic filing court. And I asked if they had relied on the briefs in Jiang, and they told me they had. So, in a way, it may sound strange, I had two cases, one in favor, one against, and I would respectfully submit that if 245A applies, then it's Judge Wilkin's. And also, as I mentioned in the prior case, this issue is being litigated in immigration courts throughout the country. I am aware of two judges, one of which was not in the Ninth Circuit, who have adopted the rationale in Veroficant. And recently, I'm aware of another immigration judge who did not discuss Veroficant, but used Choyne as the analysis to support and grant adjustment to an aged-out K-2. And I would like to reserve the rest of my time if there are no further questions. There is a question. Of course. I have to say, I've got a problem with an argument based on 245 at this point, when the case certainly put us through the opening brief, and I presume put to the district court, is premised on not being under 245. Correct. How can we take up an issue and basically adopt a position which is directly contrary to the position that was taken below and at first in this court? How can we say the district courts had a fair opportunity to deal with that question if it wasn't raised that way? It was phrased that way. And then the one issue that was actually brought up by Judge O'Neill, which I did not spot, was the last sentence of the amended 245. I'm sorry. The 214D, as it stood, right after the enactment of VINFA. Contrary to Judge O'Neill, the language about deportation was not added. It was there. The prior language was that if you don't get married within 90 days, you shall leave, and if you don't leave, you will be deported. Your opening brief appears to state unequivocally that this is not a 245 case, in your view. Correct. She was unable to file under that section, and you made no argument that 245 applies and could be interpreted in a way that's favorable to your client. Ordinarily, if an issue is not clearly argued in an opening brief, we don't reach it, period. Why should we do so in this case? Okay. First of all, when the opening brief was written, I did not have the advantage of the Verofkin decision. Certainly didn't have advantage of Choyne. And this Court in Choyne said But 245 existed, and you could have made the argument that was made in Choyne. I mean, people make arguments that are not yet supported by a Ninth Circuit decision. Well, also, as I noted in the supplemental brief in the other case, and I did cite Finpathia, that in an issue of statutory interpretation, when it's clear language, it can be brought up at any time. The Supreme Court ruled on clear statutory language, which was never an issue. In fact, there was, again, an article of fate. The Flutie doctrine applied to the old Section 244 suspension. It was argued that way by everybody. It went up on certiorari that way. It was briefed that way. It was argued that way. No one ever challenged the fact that Flutie was, quote, was in Justice O'Connor's opinion. So it's a pure question of law. And as this Court pointed out in Choyne, 245 was ambiguous. And when I read it, I tend to be very pedantic, which I think is very obvious from the brief. 245A requires that the alien have an, quote, immigrant visa immediately available. And with the K2 over 18, as pointed out by Judge Wilkin, there is no immigrant visa, as defined by the Act, available. And, you know, unless the marriage that takes place before is 18, what, you know, we may end up with is, you know, Ms. Jang went through the whole process while over the age of 18. She never had an immigrant visa immediately available any which way. So everybody went through an idle act that she couldn't adjust. And I think that's an absurd interpretation, Your Honor. I understand your position. You have a little bit of time left that you may wish to save for rebuttal. Thank you. Good morning. May it please the Court. Audrey Hammersath on behalf of the government. I'd like to address the two developments that have occurred since the briefing was done in this case, and that is the Barofkin decision and the Choyne decision. There's a key difference in both of those cases from the facts in this case. And that is that in this case, when Ms. Jang submitted her application, she was not eligible for the relief sought. In Barofkin, the petitioner there was eligible. He was under age 21 at the time he applied. He aged out while his application was pending before the agency. That is a parallel circumstance to the facts in the Choyne decision. And my reading of that decision is that what motivated the court there was the concern that the application was languishing in the agency's files. Similar concern in Barofkin, although admittedly the judge in the Barofkin case did go on to make a square disagreement with the district court judge in our case, indicating that perhaps under similar facts, she would have also ruled differently. But on the facts presented to this court, Ms. Jang became ineligible when she turned 21 the day after she arrived in the United States. So when she submitted her application, subsequently, she was not eligible and the agency correctly denied the application on that basis. So if you arrive a day before you're 21 and it's physically impossible, you can't apply, according to your view? It would be very difficult. It would be very difficult. You would have to imagine a circumstance where the marriage took place that day, the application was filed that day and adjudicated that same day. Well, I find the ‑‑ I guess I don't understand the process of a K visas, because as I understand the process, it's not like you have to do it. They sort of ‑‑ it's not quote automatic, but you're there properly because the marriage is taking place or is about to take place. And I've, you know, I think that I believe that there's something in the statute and the regs that would provide protection here. Because Congress and what they call the Child Status Preservation Act did do something about aging out. Now you're telling me in a process in which someone is even, quote, more entitled to be here, there's no protection. Maybe so. Thank you. I'm glad you're on to mention the Child Protective Services Act, because I think it is a helpful parallel for the government, actually. The CPSA ‑‑ CSPA, excuse me, applies to immigrant visas. So there is statutory protection available for aliens applying with immigrant visas. This is a nonimmigrant visa. And K nonimmigrant visa holders are treated actually quite well under the law. If they come closer to age 18, then they come closer to 21. At almost age 21, it's just a tough circumstance. But closer to 18, they are allowed to adjust status once the marriage takes place without the need for a visa to be immediately available ‑‑ excuse me, without the waiting period that traditionally applies to immigrant visas. If someone came under a student visa, an F visa, and had a child that was in that same age bracket, 18 to 21, that child would have to wait, as is done traditionally under the State Department, waiting visa availability periods for a visa to become available. K‑2 nonimmigrants do not have to do that. If they come within the closer to 18 time period, they are permitted to adjust immediately. And that's a privilege. But they are not accorded the privilege of waiting until the Child Service Protection Act. That is something that Congress reserved to immigrant visas. And I think we have to respect that distinction. But there is no statutory protection on aging out here. But their adjustment is not based on a separate application. It's based on the original approved K‑2 visa, right? The government's position is that under Section 245, a separate application to adjust status must be made. That that was the effect of the IMFA. And what does that mean, adjust? What happens? What's the inquiry when you do that? It's a very different one, isn't it, than it is for immigrants. I mean, this is a quote, we'll call it a new ‑‑ what do you do with it? You basically have no basis to deny it unless there was no marriage. What basis would you have to deny it? Let's assume for somebody who's clearly within the age group. What basis would you have to deny that visa, the approval? It's still an application, just as any other Section 245 application. So a criminal conviction during the relevant time period, child support, any of the other grounds under Section 245. So the absence of statutory eligibility would still trump what the court is suggesting would be an automatic eligibility. Thank you very much. One thing that's odd here, since I guess it was the Real ID Act, we don't get cases from district court very much. And so I understand why this came about. I understand the root that it did. But it's still unusual for us not to have an adjudicated interpretation by the agency. Are we still free to proceed? Or is there some other alternative that we should turn to? What should we look to to find out what the agency's interpretation would be in an adjudicated context? It's an interesting question, because first of all, under the Real ID Act, this is a legal question. It's a question of statutory eligibility for adjustment of status, unlike the discretionary decisions, which we argue don't belong in district court. That's how we got here under the declaratory judgment posture. There's an argument out there to be made that Ms. Jang should have exhausted remedies by awaiting placement and removal proceedings, making this argument to the immigration judge, making this argument to the immigration judge, under petition for review context. I didn't make that exhaustion argument, because she hasn't been placed in removal proceedings. And that's really beyond her control when she is. And so we made the decision not to pursue that exhaustion argument. But that is out there. And it's possible that, assuming this doesn't go her way, that she still can be placed in removal proceedings. And I suppose she can raise this argument again. You argue collateral estoppel? Well, it would depend entirely on this Court's ruling. But I'm interested, you believe this is a pure question of law, right? I do. So even though they didn't raise it in the original brief, I guess we have discretion. On the 245? I suppose that's right. I guess I disagree. I don't think that Veroff can alter the legal landscape. And so to that extent, the 245 argument could have been made. But I'll leave that to the Court. Thank you. Thank you very much. Mr. Felinski, you have a little bit of rebuttal time remaining? Yes. About the legal basis for staying here, my opening brief did cite in passing to Oktar v. Brzezinski. And one of the plaintiffs in that case, and this had to do with a different status under the vias in Victor, he arrived the day before his 21st birthday and at the airport was admitted for two years, just like they thought it would be. And this is indecision, even though the INS inspector admitted Angelus until August 13, 2003. The government asserts that the inspector's actions were made in error and that Angelus should have only been admitted until August 14, 2001, the same day he arrived in the United States. Now about fiscal impossibility, there was no way that you could fly from China, land, collect your luggage, clear immigration, cure customs, run down to City Hall, get the marriage license, get your marriage, get married, get married, get married, get married, get your papers ready, get them filed, and have them adjudicated in one day. It just can't be done. And as an act of... What's the point of that? What's the point? If everything had happened two days later, there'd be a different result and nobody would be surprised. She wouldn't have been here. Well, that's the point. Exactly. So she was given a visa, said, you, if you're not in the United States until the day before your 21st birthday, it's over. They played by the rules. The consular officer, that's what they felt. The INS inspector at the airport, that's what they felt. That all you have to do is get here, the operative date was you get here before. Now Judge Wilkins said she also disagreed with Jiang. I agree that there's a factual difference there. Counsel, your time is well over, but would you like to quickly wrap up? Okay. Just one point on Child Status Protection Act. Child Status Protection Act has nothing to do with K's at all, therefore has nothing to do with K2 age-outs. And before CISPA came out, I can personally attest that K2s just didn't age out as a matter of practice. And I have noted there is a coincidence that the K2 age-out idea didn't arise until CISPA, which on its face had nothing to do with it. And with that, I'm willing to submit, Your Honor. Thank you, Counsel. The case just argued is submitted. Again, we appreciate the arguments of both counsel. They've been very helpful. And we're perfectly done for our sitting. Thank you.
judges: Graber, Clifton, Trager